UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-89 (ABJ) |
| v. : | |
| : | |
| NATHAN WATTS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Nathan Watts to 36 months' probation with 14 days' intermittent incarceration, 60 hours of community service, and $500 in restitution.

**I.     Introduction**

Defendant Nathan Watts, a 24-year-old driver for AutoZone, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

As explained herein, a sentence of probation with intermittent incarceration is appropriate in this case for the following reasons: (1) after exiting the Capitol, Watts attempted to enter the building a second time at the North Door with a group of rioters, and stayed despite police attempts

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

1

to disburse them, (2) ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, and (3) Watts has not expressed remorse for his conduct. Given the seriousness of his conduct and lack of remorse, a meaningful period of imprisonment would be appropriate. However, given ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, as discussed in Section III, Paragraph B, it is the Government's position that Watts also needs long-term supervision. Because the D.C. Court of Appeals' decision in *United States v. Little*, No. 22-3018, 2023 WL 5313529 (D.C. Cir. Aug. 18, 2023) prohibits a sentence of both imprisonment (under Title 18, Part II, ch. 227, subch. D (imprisonment)) and probation (under Title 18, Part II, ch. 227, subch. B (probation)) for a single petty offense, the Government recommends a sentence of probation with intermittent confinement pursuant to 18 U.S.C. § 3563(b)(10).

The Court must also consider that Watts' conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Watts' crime support a sentence of 36 months' probation with 14 days' intermittent incarceration, 60 hours of community service, and $500 in restitution in this case.

II.   **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 18 (Statement of Offense), at 1-7.

*Defendant Watts' Role in the January 6, 2021, Attack on the Capitol*

Watts traveled from Parksley, Virginia, to Washington, D.C., to attend the "Stop the Steal" rally near the Washington Monument, as depicted in Image 1.



*Image 1: Watts at the Stop the Steal rally.*

Watts walked from the rally to the Capitol, and entered the building via the Senate Wing Door at approximately 3:01 p.m., as captured in Image 2. At the time he entered, there were clear indications that he was not allowed inside: there were broken furniture and glass strewn over the floor, other rioters were climbing in through the broken windows, and the police were outnumbered and overwhelmed by the rioters.



*Image 2: Watts entering the Capitol via the Senate Wing Door at 3:01 p.m.*

Once Watts was inside, he joined the rioters who entered the Crypt, at approximately 3:06 p.m., as captured in Image 3.



*Image 3: Watts inside the Crypt at approximately 3:06 p.m.*

From the Crypt, Watts joined rioters who were inside a congressional conference room, where he was captured in the footage of another rioter, Anthime Gionet, a/k/a Baked Alaska, who was livestreaming while inside the Capitol. In his footage, Gionet said to his audience, "Please pray for us. We are fighting for this country. We had a fraudulent election, and we are all here. Everyone here is a patriot and a hero." The camera then panned to Watts, who responded "YOBA!" meaning "Year of Baked Alaska," a recognition of Gionet and his livestream. Gionet said, "YOBA. We are united," and Watts responded, "Exactly!" Exhibit 1, timestamp 1:37 to 1:55.

5



*Image 4: Still image from Exhibit 1 at timestamp 1:43 capturing Watts in a congressional conference room.*

Watts exited the U.S. Capitol via a window next to the Senate Wing Door at approximately 3:16 p.m., as captured in Image 5. In total, Watts spent approximately 15 minutes inside the Capitol building.



*Image 5: Watts exiting the Capitol out a window.*

After Watts exited the building, he did not leave Capitol grounds. At approximately 4:00 p.m., Watts was part of a group of rioters attempting to break into the building through the North Door.



At one point when the police deployed tear gas, Watts was standing in front of the North Door, as captured in Exhibit 2 from timestamp 00:20 to 00:23. He stayed in the area for at least 12 more minutes, while rioters were chanting, throwing items at the doors, and ramming the doors with barricades, all while alarms were blaring and the police were continuously deploying tear gas in an attempt to disburse them.



*Image 6: Screenshot from Exhibit 2 at timestamp 00:23 showing Watts turning away from the North Door when the police deployed tear gas.*

*The Charges and Plea Agreement*

On February 23, 2023, the United States charged Watts by criminal complaint with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). On February 28, 2023, law enforcement officers arrested Watts in Virginia. On March 21, 2023, the United States charged Watts by a 4-count Information with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). On June 26, 2023, pursuant to a plea agreement, Watts pleaded

8

guilty to Count 4 of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Watts agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Watts now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Watts faces up to six months of imprisonment and a fine of up to $5,000. Watts must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Watts' participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Watts, the absence of violent or destructive acts is not a mitigating factor. Had Watts engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Watts's case is that he attempted to enter the building for a second time. It is particularly significant that he attempted to enter again at the North Door, given how aggressive and violent the rioters were at that entrance. Given the fact that the police deployed multiple rounds of tear gas against the rioters and Watts would have heard the constant

alarms, it would have been clear to Watts that he was not allowed in the building and should leave. Nevertheless, he stayed on site.

Additionally, Watts has not demonstrated remorse for his actions at any point during the pendency of his case.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of probation with intermittent incarceration in this matter.

### B. The History and Characteristics of Watts

Due to Watts' prior conduct and ███████████, and because he violated a condition of pretrial supervision during the pendency of this case, the Court should impose a probation sentence that will keep him under the Court's supervision past the sentencing date.

Watts has no criminal convictions; however, he was arrested in May of 2019 on a stalking charge. ECF 23 ¶ 29. He was accused of stalking an acquaintance by sending her repeated messages on social media and following her on her college campus. Watts described his own conduct as "stalking," and the police secured a protective order for the victim. ███████████████████████████████████████ The protective order was dismissed in May of 2021, so Watts would be able to enlist in the military. *Id*.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Lastly, Watts violated the conditions of his pretrial supervision when he traveled to Florida in July of 2023 without obtaining prior approval from the Pretrial Services Agency. ECF 19 at 2.

10

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

*Specific Deterrence*

Watts' prior contact with the criminal justice system, as well as the fact that he has expressed no remorse for his conduct on January 6, reflect the need for a sentence that will deter him from similar wrongdoing.

11

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Watts based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Watts has pleaded guilty to Count 4 of the Information, charging him with Parading, Demonstrating, or Picketing in Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

*United States v. Glenn Croy*, 21-cr-162 (BAH) (defendant sentenced to 14 days of community confinement, three months of home detention, and three years of probation) – The defendant entered the Capitol building after watching law enforcement attempting to keep rioters away with tear gas; walked through the Crypt; joined a crowd that forced a line of law enforcement officers to retreat; took video footage of rioters defacing government property; left the building and re-entered around 40 minutes later; boasted on social media that he "stormed the Capitol"; and minimized his misconduct in social media posts.

*United States v. Robert Reeder*, 21-cr-166 (TFH) (defendant sentenced to three months of imprisonment) – The defendant took video footage of rioters climbing scaffolding and breaching doors; celebrated that thousands of people were fighting despite getting tear-gassed; left and re-entered the Capitol building; recorded an assault on law enforcement; and recorded a mob of rioters chanting "Hang Mike Pence".

*United States v. Troy Williams & Dalton Crase*, 21-cr-82 (CJN) (defendants sentenced to 15 days of intermittent incarceration and 36 months of probation) – The defendants entered the Capitol building after seeing violence against law enforcement; left and re-entered the building;

13

observed violence inside the building; and did not depart until tear gas and flash grenades were deployed.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## IV. Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Watts must pay $500 in restitution, which reflects in part the role Watts played in the riot on January 6.[4] ECF 17 at ¶ X. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Watts' restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* ECF 23 ¶ 77.

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Watts to 36 months' probation with 14 days' intermittent incarceration, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Carolina Nevin*
CAROLINA NEVIN
Assistant United States Attorney
NY Bar No. 5226121
601 D Street, NW
Washington, DC 20530
(202) 803-1612
carolina.nevin@usdoj.gov